PARRO, J.,
concurring.
hi agree with the finding that the defendants have not established that they are entitled to a summary judgment as a matter of law. Therefore, I believe that the trial court judgment should be reversed and that this matter should be remanded to the trial court for further proceedings.
I do not dispute that, to recover a commission under the extension clause of the TEC listing agreement, TEC must establish a minimal causal connection between a finding that it “submitted” the property to Pontchartrain during the term of the TEC listing agreement and the ultimate lease confected between D & L and Pontchartrain. Furthermore, I agree that a genuine issue of material fact exists as to whether there was a minimal causal connection between TEC’s efforts and the lease with Pontchartrain. However, in light of the evidence offered, I also believe that a genuine issue of material fact exists as to whether TEC “submitted” the property to Pontchartrain during the term of the TEC listing agreement.[1] Therefore, I *1132 would remand for further proceedings on this issue as well. Accordingly, I respectfully concur.

. Under the facts presented in this case, I find the conclusion that Danos’s continued "negotiations” and "discussions” with Barrois during the term of the TEC listing agreement necessarily entailed a submission of that property to Pontchartrain to be questionable. *1132 It appears that the inclusion of the phrase "Broker has submitted said property during the term of this contract” in the extension clause of the TEC listing agreement is ambiguous, requiring further consideration of its meaning on remand of this matter. See LSA-ce. arts. 2045-2057. For example, how many times may one property be "submitted” to the same prospective lessee or purchaser? Under the holding of this case, there were three submissions of the property to Pontchartrain.